IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS PENSION FUND; TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS WELFARE FUND; TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS SAVINGS FUND; TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS SCHOLARSHIP FUND; and TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS JOINT COOPERATION TRUST FUND,<br><br>        Plaintiffs,<br><br>   v.<br><br>NGM SERVINCES, INC.,<br><br>        Defendant. | No. 14 C 5701 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On July 25, 2014, plaintiffs Trustees of the Chicago Painters and Decorators Pension Fund and its related funds (collectively, the "Funds") filed a complaint ("Complaint") (Dkt. No. 1 ("Compl.")) against defendant NGM Services, Inc. ("NGM") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). The Funds' Complaint seeks an order declaring NGM to be a successor or alter ego of the now bankrupt Geno's Decorating, Inc. ("Geno's"), and an order requiring NGM to submit all necessary books and records to the Funds' accountant for the purpose of determining whether or not NGM is in compliance with its

purported obligation to the Funds.[1]

On August 4, 2014, the Funds moved for a default judgment and audit order (Dkt. No. 8) based on NGM's failure to respond to the Complaint. On September 1, 2014, NGM filed an answer (Dkt. No. 10) denying every allegation in the Complaint, including allegations concerning the Funds' identity, the identity of past and current officers of NGM and Geno's, and the existence of material publicly available on NGM's website. (*Id.*) On September 16, 2014, at the court's instruction, NGM filed an amended answer ("Amended Answer") (Dkt. No. 13 ("Am. Ans.").) On September 23, 2014, the Funds moved for judgment on the pleadings and for an audit pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 15.) For the reasons explained below, the Funds' motion (Dkt. No. 15) is denied.

## FACTUAL BACKGROUND[2]

Until its bankruptcy filing on March 30, 2010, Geno's operated as a commercial, residential, and industrial painting business. (Compl. & Am. Ans. ¶¶ 3, 14.) On August 1, 2009, Geno's renewed its collective bargaining and trust agreements with Painters District Council #14 (the "Union"), which required Geno's to make contributions to the Funds on behalf of Geno's employees, as Geno's had done throughout its 14 years as a signatory contractor with the Union. (Compl. & Am. Ans. ¶¶ 1, 7, 9.) Despite the agreements, Geno's failed to make the requisite contributions between August 1, 2009 and November 30, 2009. (Compl. & Ans. ¶ 10.) On February 3, 2010, the Funds filed a lawsuit against Geno's and its president and owner, Gene Mondello ("Mondello"), to recover $13,256.63 in delinquent contributions, liquidated damages,

---

[1] NGM is and always has been a non-Union employer. Its purported obligations to the Funds stem from Geno's alleged ERISA liability.

[2] Unless otherwise stated, all of the facts discussed below are undisputed by NGM's Amended Answer.

and audit costs. (Compl. ¶¶ 1-12.) *See also Trustees of Chicago Painters and Decorators Pension Fund* v. *Geno's Decorating, Inc.*, No. 10 C 717 (N.D. Ill.) (Lindberg, J.) ("*Geno's I*").

On March 17, 2010, two days after Geno's answer to the Funds' complaint was due, NGM registered for the first time as an Illinois corporation.[3] (Compl. Ex. A.) NGM, like Geno's, provides commercial, residential, and industrial painting services. (Compl. & Am. Ans. ¶ 19.) Unlike Geno's, NGM also provides handyman and snow removal services. (Am. Ans. ¶ 17.) NGM's business address is the same as Geno's former business address. (*Id.* ¶ 19.) Mondello is NGM's president and owns and "undisclosed percentage" of NGM. (*Id.* ¶ 21.) NGM's corporate secretary is Mondello's wife, Nancy Mondello. (*Id.* ¶ 22.) And Geno's former phone number now rings to NGM. (*Id.* ¶ 20.)

On March 30, 2010, thirteen days after NGM's incorporation, Geno's filed for Chapter 7 bankruptcy. (*Id.* ¶ 20.) One day later, on March 31, 2010, the district court granted the Funds' request to dismiss all claims against Geno's and entered a default judgment against Mondello in the amount of $13,256.64. *See Geno's I*, No. 10 C 717 (Dkt. No. 12). On May 5, 2010, the Funds served Mondello with a citation to discover assets following the *Geno's I* judgment. *Geno's I*, No. 10 717 (Dkt. Nos. 14, 15). Mondello never responded. *Id.*

On June 4, 2010, the trustee closed Geno's bankruptcy case after reporting that he had received no property or money from Geno's and had determined, after a diligent inquiry, that there was no property available for distribution to Geno's creditors. (Compl. & Am. Ans. ¶ 23) *See also In re Geno's Decorating, Inc.*, 10 BK 13858 (Bankr. N.D. Ill June 4, 2010) (Dkt. Nos. 7, 8.) The Funds "believe" that all of Geno's supplies and equipment transferred to NGM before

---

[3] NGM concedes that *somebody* registered the company as an Illinois corporation, but denies that Mondello was that somebody. (Ans. ¶ 13.)

Geno's filed for bankruptcy. (Compl. ¶ 23.) NGM does not deny the Funds' allegation and admits that "NGM may have purchased some assets from Geno's." (Am. Ans. ¶ 23.)

NGM continues to operate as a commercial, residential, and industrial painting service, using Geno's personnel, location, equipment, and phone number. (Compl. & Ans. ¶¶ 19-22.) Unlike Geno's, however, NGM is a non-union employer. (*Id.* ¶ 25.) On July 9, 2014, after more than four years of inactivity, the Funds served NGM with a citation to discover assets in connection with the default judgment entered against Mondello in *Geno's I*. *See Geno's I*, 10 C 717 (Dkt. Nos, 16, 17.) On July 25, 2014, following NGM's failure to respond to the citation, the Funds filed a new action—the action currently before the court—seeking a declaration that NGM is a successor or alter ego of Geno's, and thus liable for Geno's outstanding ERISA obligations. (Compl. ¶ A.)

NGM's Amended Answer admitted a number of the facts alleged in the Funds' Complaint, prompting the Funds to move for judgment on the pleadings pursuant to Rule 12(c).

## LEGAL STANDARD

In ruling on a Rule 12(c) motion that seeks to dispose of the case on its substantive merits, "the appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleading." *Alexander* v. *City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). The court may also consider documents attached or referenced to the pleadings, and the court may take judicial notice of matters of public record. *United States* v. *Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991). All well-pleaded allegations in the non-movant's pleadings must be taken as true, and all facts and reasonable inferences from those facts must be construed in the light most favorable to the non-movant. *Alexander*, 994 F.2d at 336. Legal

characterizations of the facts by the non-movant, however, are not binding. *Nat'l Fid. Life Ins. Co.* v. *Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987).

ANALYSIS

Before evaluating the merits of the Funds' motion, the court must address NGM's contention that the court lacks subject matter over the Funds' claim and that the Funds lack standing to sue. Neither argument is availing.

NGM first contends that the court does not have jurisdiction in light of the United States Supreme Court's decision *Peacock* v. *Thomas*, 516 U.S. 349 (1996). In *Peacock*, the Supreme Court held that attempts to hold corporate officers vicariously liable for their firms' pension debts invoke state law, not federal law, and federal courts therefore lack jurisdiction over efforts to pierce the corporate veil in pursuit of an ERISA judgment. *Id.* at 354. But the Funds here do not seek to pierce the corporate veil between Geno's and NGM because there never was any veil between the two companies. Geno's and NGM coexisted for only 13 days in 2010 and there is no evidence before the court establishing that the two companies operated as one. Instead, the Funds seek to hold NGM liable under theories of successor or alter ego liability, both of which are claims for direct—not vicarious—liability. *See, e.g.*, *Bd. of Trs.* v. *Elite Erectors*, 212 F.3d 1031, 1038 (7th Cir 2000) ("[A] contention that *A* is *B*'s "alter ego" asserts that *A* and *B* are the same entity; liability then is not vicarious but direct.") The Funds claim against NGM is therefore one for direct liability under ERISA—a distinctly federal law—over which the court has jurisdiction pursuant to 28 U.S.C. § 1331. *See Elite Erectors*, 212 F.3d at 1038 ("All liability under ERISA is federal.").

NGM next argues that the Funds lack standing to sue in light of Geno's discharge in its bankruptcy case. NGM's argument, which is really about preclusion—not standing—is similarly

opposite to well-established Seventh Circuit law. In *Chicago Truck Drivers* v. *Tasemkin, Inc.*, 59 F.3d 48 (7th Cir. 1995), the Seventh Circuit addressed the viability of an ERISA fund's claim against a successor corporation where the predecessor had filed for bankruptcy. There, as here, the defendant argued the bankruptcy proceedings foreclosed successor liability because creditors should not be given a second opportunity for recovery after coming up short in the bankruptcy proceeding. *Id.* at 50. The Seventh Circuit rejected that argument and concluded that because the very purpose of successor liability is to provide a second chance for recovery, an intervening bankruptcy proceeding should not have a *per se* preclusive effect on an ERISA fund's attempts to hold the successor liable. *Id.*

The remainder of the Seventh Circuit's holding in *Tasemkin*, however, illustrates why the Funds here cannot meet the demanding standard of review applicable to Rule 12(c) motions. Although the Seventh Circuit refused to grant bankruptcy proceedings the *per se* preclusive effect NGM seeks, a creditor's ability (or inability) to recover against a predecessor remains one of the factors the court must consider in determining successor liability. *See Tasemkin*, 59 F.3d at 50. Specifically, the court cautioned against imposing liability on a successor when a predecessor could not have provided any relief when the underlying claims arose. *Id.* (citing *Musikiwamba* v. *ESSI, Inc.*, 760 F.2d 740, 751 (7th Cir. 1985)). The court must therefore consider the availability of relief from Geno's along with the other facts supporting successor or alter ego liability.

Here, the only information concerning the availability of relief from Geno's comes from the docket of Geno's bankruptcy case, and that information does not support the relief sought by the Funds. Geno's bankruptcy trustee found no assets available to distribute to Geno's creditors, a group that would have included the Funds had they participated in the bankruptcy proceeding. The Funds chose not to participate, and perhaps that is why the Complaint is devoid of

allegations concerning Geno's financial condition during the relevant time period.[4] As it stands, there no information before the court supporting the Funds' ability to recover from Geno's in March 2010. The dearth of information is presumably why the Funds also ask this court to order an audit of NGM, but that approach puts the cart before the horse. The Funds cannot rely on the result of a future audit to support their argument that Geno's could have paid its ERISA obligations before transferring "some" of its assets to NGM. In ruling on the Funds' Rule 12(c) motion, the court must draw all inferences in favor of NGM, including the inference that the Funds could not have recovered against NGM's predecessor. The audit the Funds seek is the very purpose of discovery. It may be that Geno's transferred all of its assets to NGM to circumvent ERISA and to resurrect an identical business. But that is a question to be answered during summary judgment or trial, not through a judgment on the pleadings where the facts are in dispute.

The remaining factors the court must consider in determining successor or alter ego liability likewise require discovery. The factors supporting successor liability include whether "[a] there has been a substantial continuity of the same business operations; [b] the new employer uses the same plant; [c] the same or substantially the same work force is employed; [d] the same jobs exist under the same working conditions; [e] the same supervisors are employed; [f] the same machinery, equipment, and methods of production are used; and (g) the same product is manufactured or the same service [is] offered . . . ." *Int'l Union of Operating Engineers, Local 150, AFL-CIO* v. *Centor Contractors, Inc.*, 831 F.2d 1309, 1312 (7th Cir. 1987) (internal citations and quotations omitted). Similarly, in determining whether a company is

---

[4] As discussed above, the Funds chose to take a judgment against Mondello personally, as authorized by ERISA, and dismiss the claims against Geno's.

the alter ego of its predecessor, the court considers "whether they have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Barker* v. *A.D. Conner Inc.*, 807 F. Supp. 2d 707, 721 (N.D. Ill. 2011) (Dow, J.).

Although NGM admits that it performs services similar to those performed by Geno's, has the same President, and operates at the same location, the court lacks information concerning the two companies' customers, workforce, assets, and ownership. The question of ownership, in particular, illustrates the need for discovery in this case. NGM's Amended Answer states that Mondello is "an owner of [an] undisclosed percentage of ownership" of NGM. (Am. Ans. ¶ 21.) NGM's response is undoubtedly frustrating for the Funds; Mondello's stake is "undisclosed" because NGM has deliberately refused to disclose it. On a Rule 12(c) motion, however, the court must presume that Mondello and his wife do not own a large enough share of NGM to support holding NGM liable for Geno's debts. Facts learned in discovery, by contrast, would supersede the court's required presumption and will inform counsel as to the true nature of NGM's formation, ownership, and operations.[5] In *Tameskin*, the case the Funds urge the court to follow, the Seventh Circuit held that because of "the myriad factual circumstances and legal contexts in which [successor liability] can arise . . . emphasis on the facts of each case as it arises is especially appropriate." *Tameskin*, 59 F.3d at 48. That holding applies with equal force here and illustrates why judgment on the pleadings, for the plaintiff, is rarely appropriate given the factual inquiries necessary to determine successor or alter ego liability.[6] The Funds here have not

---

5   And perhaps the origins of NGM's name. The court observes that one possibility is that "NGM" is a combination of Nancy and Gene Mondello's first initials along with their joint last initial.

6   The Funds have not provided, and the court through its own research has not discovered, any case in this circuit determining the question of successor or alter ego liability in favor of a plaintiff on a Rule 12(c) motion.

presented sufficient undisputed facts for the court to make a determination on the question of successor or alter ego liability. The Funds' motion for judgment on the pleadings pursuant to Rule 12(c) must therefore be denied.

## CONCLUSION

For the reasons explained above, the plaintiff Funds' "motion for judgment on the pleadings and for audit" [15] is denied. The court requests that counsel for the parties meet and confer pursuant to Rule 26(f). The court further requests that counsel file a joint Form 52 by 1/22/2015. This case is set for a report on status and entry of a scheduling order at 9:00 a.m. on 1/29/2015. The parties are strongly encouraged to discuss a global settlement encompassing the claims in this case, as well as non-party Gene Mondello's and defendant NGM's failures to respond to the outstanding citations to discover assets in Case No. 10 C 717.

ENTER:

_____
JAMES F. HOLDERMAN
District Judge, United States District Court

Date: December 22, 2014